UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSE ASCENCIO-ZETINO,

Petitioner,

v.

BRUCE SCOTT et al.,

Respondents.

CASE NO. 2:26-cv-02856-DGE

ORDER GRANTING WRIT OF HABEAS CORPUS (DKT. NO. 4)

Before the Court is Petitioner's petition for writ of habeas corpus. (Dkt. No. 4.) For the reasons discussed below, the Court GRANTS the petition.

## I. BACKGROUND

### A. Factual Background

Petitioner, a native and citizen of El Salvador, entered the United States at an unknown place or time. (Dkt. Nos. 7 at 3; 8-1 at 2.) Petitioner identifies he has lived in the United States for a decade, has a U.S. citizen child who depends on his care, is married, has stable employment, has filed tax returns annually, and has no criminal record. (Dkt. No. 4 at 3, 9–10.)

On April 12, 2026, Border Patrol Officers encountered Petitioner at the Mussleshell County Jail in Roundup, Montana.[1] (Dkt. No. 9 at 2.) On April 13, 2026, Department of Homeland Security ("DHS") officials detained Petitioner and took him into custody. (Dkt. No. 7 at 3.) Petitioner has remained in custody at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington since April 21, 2026. (Dkt. No. 9 at 2.) DHS charged him under 8 U.S.C. § 1182 (a)(6)(A)(i) as an "[inadmissible] alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General." (Dkt. Nos. 8-1 at 2; 9 at 2.)

Petitioner filed an application for cancellation of removal. (Dkt. Nos. 4 at 10; 8-3 at 5.) Immigration Judge ("IJ") Drew Nishiyama denied his application for cancellation of removal and ordered Petitioner removed on June 22, 2026. (Dkt. Nos. 4 at 2; 8-3 at 3, 5; 9 at 2.) Petitioner filed an appeal with the Board of Immigration Appeals ("BIA") on July 9, 2026. (Dkt. No. 4 at 2; 9 at 3.) The appeal is currently pending. (*Id.*)

On June 29, 2026, United States District Judge Jamal N. Whitehead granted Petitioner's first petition for writ of habeas corpus and directed Respondents to either release Petitioner within 24 hours or provide him a bond hearing within 14 days of the order. *Zetino v. Scott*, Case No. 2:26-cv-1760-JNW, 2026 WL 1862079, at *2 (W.D. Wash. June 29, 2026).

On July 7, 2026, Petitioner filed a motion for continuance of his bond hearing with the immigration court to collect more evidence in support of his bond request. (Dkt. Nos. 7 at 3; 9 at 3.) On July 8, 2026, Petitioner requested an extension of time during the bond hearing. (Dkt. No. 4 at 5.) An IJ at the Tacoma Immigration Court denied Petitioner the continuance and then

---

[1] Respondents state Petitioner was held for trespass at the Mussleshell County Jail. (Dkt. No. 9 at 2.) Respondents do not allege Petitioner engaged in criminal conduct.

denied bond, finding Petitioner failed to demonstrate he was not a flight risk. (Dkt. Nos. 7 at 3; 9 at 3.) Petitioner has not filed an appeal of the IJ's bond denial. (Dkt. No. 9 at 3.) Respondents state that "[b]ecause Petitioner failed to appeal the IJ's bond order, a written bond memorandum was never issued." (*Id.*) The only documentation from this proceeding available in the record is an *unsigned* order from an unnamed IJ denying Petitioner's request for bond. (Dkt. No. 8-4.) The unsigned order has a box checked ordering Petitioner to remain in custody and second box checked identifying "Flight Risk." (*Id*. at 2–3.)

Petitioner, who is proceeding pro se, states that the immigration court did not perform an individualized assessment as to whether he was a flight risk and abused its discretion in violation of his due process rights. (Dkt. No. 4 at 7.) Petitioner further states that numerous factors demonstrate he is not a flight risk, including "almost a decade of continuous stable residency in United States, a fixed address in Houston, Texas, stable employment, annual tax filings, strong professional and community ties, a wife, and one U.S. citizen child," as well as his lack of history of fleeing authorities and strong incentive to attend proceedings due to his pending cancellation of removal application. (Dkt. No. 4 at 10.)

### B. Procedural History

Petitioner filed a petition for a writ of habeas corpus on August 12, 2026. (Dkt. No. 4.) Petitioner argues the IJ's denial of his bond request was an abuse of discretion and the proceedings violated due process. (Dkt. No. 4 at 3.) Petitioner requests release from custody. (Dkt. No. 4 at 6.) Pursuant to the Court's scheduling order, Respondents filed a response on August 26, 2026. (Dkt. No. 7.)

## II. ANALYSIS

### A. Legal Standard

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

### B. The Court Waives Any Prudential Exhaustion Requirement

Respondents argue the Court should require Petitioner to exhaust his administrative remedies before seeking habeas relief. (Dkt. No. 7 at 5–8.) Exhaustion of administrative remedies is prudential rather than jurisdictional and may be required where the following factors outlined in *Puga v. Chertoff*, 488 F.3d 812 (9th Cir. 2007) are present:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (quoting *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990)). Exceptions to the exhaustion requirement include "situations . . . where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the

administrative proceedings would be void." *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981). Similarly, the exhaustion requirement is waived where the petitioner is "challenging issues other than the [BIA's] ruling on removability." *Laing v. Ashcroft*, 370 F.3d 994, 1001 (9th Cir. 2004) (citing *Marquez v. INS*, 346 F.3d 892 (9th Cir. 2003)).

The first factor weighs against requiring prudential exhaustion. Respondents argue that because Petitioner must initiate an appeal before the BIA for him to receive a written decision explaining the reasons for his bond denial request, the present record is not sufficiently developed, thereby weighing against waiver of prudential exhaustion. (Dkt. No. 7 at 4–5.) But the present undisputed record establishes that Respondents offer no information as to the reasons why Petitioner was found to be a flight risk; in fact, the order Respondents produce evidencing a determination of flight risk is not even signed. (*See* Dkt. No. 8-4 at 2–3.) Respondents do not cite any agency expertise that makes BIA consideration necessary to develop a proper record in this instance where Respondents offer no rationale for finding Petitioner a flight risk. The only present issue is whether the IJ considered and explained why the evidence presented at the bond hearing supported a flight risk finding. Respondents are part of the Executive and should be able to provide the reasons for Petitioner's detention. Where no explanation whatsoever is provided, BIA "expertise" in immigration bond decisions is unnecessary to generate a proper record or reach a proper decision because the total absence of any record raises constitutional concerns. *See Garcia v. Hyde*, Case No. 25-CV-585-JJM-PAS, 2025 WL 3466312, *7 (D.R.I. Dec. 3, 2025) (the petitioner "ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile").

The second factor also weighs against requiring exhaustion. Although relaxation of prudential exhaustion could encourage, as Respondents suggest, others to bypass the agency review process (Dkt. No. 7 at 4), there is value in identifying when there has been an abuse of discretion by not explaining any rationale for denying bond. Though Respondents assert that Petitioner only "challenges a fact-specific bond determination that lacks any novel legal question or broader guidance value beyond the circumstance presented here," (Dkt. No. 7 at 5), the Court disagrees. Petitioner's habeas petition presents a broader issue; namely, whether the immigration courts are providing non-citizens a meaningful opportunity to present evidence, engaging the evidence presented at bond hearings, applying the relevant factors to such evidence in determining flight risk, and providing non-citizens with a reasoned explanation of the decision. The Court, therefore, finds it beneficial to provide the specific immigration court, which regularly handles bond hearings, guidance on the circumstances that will lead to a finding of constitutional deficiency.

As for the third factor, the Court finds it weighs against prudential exhaustion. Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct a factual or evidentiary error. *See, e.g.*, *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026).

Moreover, given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim. *See Scott v. Wamsley*, Case No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) ("Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA

renders a decision on a pending appeal.") (quoting *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019)).

Accordingly, the Court finds it appropriate to waive any requirement that Petitioner exhaust his administrative remedies before seeking habeas relief.

### C. Petitioner's Bond Hearing Violated Due Process

Petitioner argues the IJ's bond denial was constitutionally deficient because the IJ's determination that Petitioner was a flight risk was an abuse of discretion. (Dkt. No. 4 at 3, 9, 11, 12.) Petitioner also points to additional alleged due process violations in the IJ's bond proceeding including (1) that Petitioner's request for extension of time was denied, (2) there was no contemporaneous record of the proceedings, (3) the IJ wrongly shifted the burden to Petitioner to prove he was not a flight risk. (Dkt. No. 4 at 3, 5.) This Court need not reach Petitioner's latter arguments because the *unknown* IJ's determination that Petitioner was a flight risk, as "evidenced" by an unsigned form order, was an abuse of discretion and otherwise in violation of Petitioner's due process rights sufficient to grant this petition.

"The habeas court's review of an immigration judge's determination of flight risk is for abuse of discretion." *Soriano*, 830 F. Supp. 3d at 1080 (citing *Martinez v. Clark*, 124 F.4th 775, 779, 784–785). "Under an abuse of discretion standard, '[a district court] cannot reweigh evidence. . . [but] can [only] determine whether the BIA applied the correct legal standard.'" *Martinez*, 124 F.4th at 785 (citation modified) (considering "dangerousness"); *see id.* at 783 ("Even though what constitutes 'dangerousness' is malleable and involves agency discretion,. . . this is still a legal standard so long as federal courts can assess whether an IJ correctly applied the statutory standard to a given set of facts."); *see also Lopez Reyes v. Bonnar*, Case No. 18-cv-07429-SK, 2018 WL 7474861, at *8 (N.D. Cal. Dec. 24, 2018) ("where the IJ

misinterpreted or failed to consider probative evidence, the Court may review such errors under its habeas review.”).

An IJ may consider the following factors in making bond determinations:

> (1) whether the alien has a fixed address in the United States; (2) the alien’s length of residence in the United States; (3) the alien’s family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien’s employment history; (5) the alien’s record of appearance in court; (6) the alien’s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien’s history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien’s manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020).

The Court concludes the unknown IJ abused his discretion in denying Petitioner’s bond as there is no indication whatsoever that any of these factors were weighed. The record contains no information concerning what evidence the unknown IJ considered in denying Petitioner’s bond request or what legal standard was used. Respondents offer no audio recording or transcript of the bond hearing. Instead, the only record Respondents produce is an unsigned, boilerplate bond denial order from an unknown IJ, stating that Petitioner’s request for custody redetermination was denied. (Dkt. Nos. 7; 8-4.) The sole reason on this document is a box checked next to “Flight Risk.” (*Id.*) Under longstanding Ninth Circuit immigration precedent, the failure to provide any reasoned explanation is an abuse of discretion. *Tadevosyan v. Holder*, 743 F.3d 1250, 1253 (9th Cir. 2014); *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (a court “abuses its discretion when its fails to consider and address in its entirety the evidence submitted by a petitioner”) (internal citations omitted).

So is the failure to apply the correct legal standard. *See Martinez*, 124 F.4th at 785. There is nothing in the record indicating that the IJ considered the *Guerra* factors or applied them to the facts of Petitioner's case. *See Medina Romero v. Hernandez*, Case No. 2:26-cv-02757-JNW, 2026 WL 2568562, at *4 (W.D. Wash. Aug. 31, 2026). The Court is aware that the practice in immigration court is to provide written reasons for a bond decision only upon appeal of that decision, *see* EOIR Policy Manual, Part II, Chapter 8.3(7), available at https://www.justice.gov/eoir/policy-manual-eoir/part-II/icpm/chapter-8-3 (last visited September 10, 2026). But providing a written memorandum after the fact does not cure the fundamental legal error of failing to provide any reasons or apply the *Guerra* factors at the hearing itself. At a minimum, a noncitizen in detention should be informed at the hearing of the reasons for his continued detention. It cannot be that a noncitizen facing years of detention may only learn the reasons for his continued detention if he chooses to appeal an IJ's decision to the BIA, particularly when that appeal may prove futile. It is unclear how a detainee could even make an informed decision whether to appeal without knowing the IJ's reasons for finding them a flight risk or a danger to the community.

Here, Petitioner identifies he has been in the United States for a decade, has a dependent United States citizen child, is married and in a stable relationship, has a fixed address, has employment history, has a history of filing his tax returns, has no criminal history, and that there is no evidence he has ever fled from authorities. (Dkt. No. 4 at 10–11.) Petitioner also identified he applied for cancellation of removal and that he has an appeal pending before the BIA regarding that application. (*Id.* at 10.) Based on these circumstances, Petitioner asserts there was no basis to conclude he was a flight risk.

Respondents do not challenge any of Petitioner's assertions and offer no evidence of criminal convictions or history of fleeing from authorities. (*See* Dkt. Nos. 7; 8-2 at 3.) Respondents put forth no evidence whatsoever to discredit Petitioner's assertions or the equities indicating he is not a flight risk. Again, the only record Respondents put forth is an unsigned, boilerplate order from an unknown IJ, which Respondents suggest the Court should accept to justify Petitioner's continued detention. Such record is not acceptable.

Based on the record presented, Petitioner has established he was not provided a constitutionally sufficient bond hearing, that the IJ abused their discretion in finding flight risk. The Court can see no reason why Petitioner's bond request was denied.

**D. Appropriate Remedy**

Petitioner argues the Court should release him immediately. (Dkt. No. 4 at 5, 12.) Respondents argue Petitioner is not entitled to release and suggest the Court should instead direct the IJ to issue a written bond memorandum. (Dkt. No. 7 at 2, 7–8.) Respondents' position does little to cure the due process violation or deter future violations.

Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Under the circumstances, the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy. *See Soriano*, 830 F. Supp. 3d. at 1082 (ordering release); *Vasquez Lopez v. Hernandez*, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026) (same); *W.T.M.*, 2026 WL 262583, at *5 (same); *Garcia v. Hyde*, 817 F. Supp. 3d 112, 131 (D.R.I. 2025) (ordering habeas petitioner's immediate release from custody "[g]iven the due process violations that pervaded his bond hearing"); *Miri v. Bondi*, Case No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, at *12 (C.D. Cal. Mar. 5, 2026) (ordering habeas petitioner's

immediate release after finding IJ abused discretion in denying petitioner's request for bond at the bond determination hearing).

As has been stated before, if the IJs "issue bond denial orders without any explanation in writing or on the record, the IJs and Respondents can expect the Court will continue to grant habeas relief." *Vasquez v. Scott*, Case No. 2:26-cv-02515-DGE, 2026 WL 2285535, at * 5 (W.D. Wash Aug. 7, 2026).

## IV CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's petition for writ of habeas corpus. (Dkt. No. 4.) The Court further ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody with reasonable conditions of supervision within ONE day of this Order.
2. Petitioner SHALL not be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.[2]
3. Within **TWENTY-FOUR (24)** hours of this order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody and SHALL file a copy of the conditions of supervision.

The Clerk is directed to calendar this event and close the matter.

Dated this 14th day of September, 2026.

[2] In the event Petitioner is re-detained after his release pursuant to this Order, any claim by Petitioner that he has been unlawfully re-detained in violation of this Order shall be presented as a new habeas petition.



David G. Estudillo
United States District Judge